UNITED STATES OF AMERICA *v.* H. HACKFELD & COMPANY, LTD., a corporation.

(12 Cases.)

DATED: APRIL 21, 1903.

1. The legal custody of alien immigrants is in the ship bringing them to this country until the final completion of the examination of such alien immigrants by the proper inspection officers, notwithstanding they may have been removed from the ship for the purposes of such examination.

2. The temporary removal for purposes of inspection provided for by the statute is simply for the convenience of the shipping people, and to prevent delay in the completion of the voyage of the vessel to its terminal point; and in the language of the statute, such "temporary removal shall not be considered a landing pending such examination."

3. Alien immigrants are treated as being still on board the vessel, and until they are declared to be lawfully entitled to enter the United States, the responsibility for their safe-keeping is with the vessel or its agent.

4. The vessel or its agent cannot avoid responsibility by claiming or proving that any officer or employe of the United States assumed to look after these alien immigrants.

5. If, pending an examination and inspection by the proper officers, any alien immigrant escapes into United States territory, such escape is "a negligent landing........at a time and place other than that designated by the inspection officers," within the meaning of Section 8 of the Act of March 3, 1891, relative to alien immigrants, etc.

6. After alien immigrants have been examined by the proper inspection officers and a decision adverse to their landing has been arrived at, the custody of such immigrants continues in the ship or its agent; and it is the duty of the ship or its agent, after notice of the rejection of such alien immigrants, to deport them to the country from whence they came.

7. If, after rejection by the proper inspection officers and pending deportation, any alien immigrant escapes into United States territory, then the said ship or its agent is liable under Section 10 of the Act of March 3, 1891, relative to alien immigrants, etc.

8. Due care on the part of the steamship company or its agent to prevent the escape of alien immigrants is no excuse under the law, and cannot be proven.

9. Nothing will excuse the steamship company or its agent, but what is known in law as *vis major*, or inevitable accident.

10. When the government has proven to the satisfaction of the jury, the inspection and rejection of alien immigrants, with due notice thereof to the steamship company or its agent, the burden of proof is cast on the defendant to show that the said alien immigrants were returned to the country from whence they came.

CRIMINAL LAW.

Twelve informations based on Sections 8 and 10 of the Act of Congress of March 3, 1891, entitled "An Act in amendment of the various Acts relative to immigrants and the importation of aliens under contract or agreement to perform labor."

*Robert W. Breckons,* U. S. District Attorney, for the government.

*Kinney, McClanahan & Bigelow,* attorneys for the defendant.

CHARGE TO THE JURY.

ESTEE, J. These cases arise upon twelve informations filed by the United States District Attorney for the District of Hawaii, in which informations the defendant is charged with violating the provisions of the Act of Congress of date March 3, 1891, entitled "An Act in amendment of the various Acts relative to immigrants and the importation of aliens under contract or agreement to perform labor." (1 Supp. R. S. U. S., P. 934.)

Each of these informations contains two counts, one under Section 8 and the other under Section 10 of the law above referred to.

It is a part of the duty of the United States Congress to protect the people of this country by suitable legislation against the entrance herein of certain objectionable classes of aliens; and in accordance therewith various Acts have been passed by Congress, among them being the Act of March 3, 1891, for violations of Sections 8 and 10 of which these informations are prosecuted. Among the prohibited classes enumerated in said Act are idiots, insane persons, paupers or persons likely to become a public charge, persons suffering from loathsome or contagious diseases, persons who have been convicted of a felony or other infamous crime or misdemeanor involving moral turpitude, and persons whose passage money has been paid by another or who has been assisted to come here, with certain exceptions as to the last class.

It is provided in said Act that when ships arrive at any port within the United States, having on board alien immigrants, it shall be the duty of the commanding officer and the agent of the steam or sailing vessel, to furnish to the inspection officers, before any of these immigrants are landed, certain manifests, containing the name, nationality, last residence and destination of every such alien. The inspection officers thereupon go or send competent assistants on board such vessel and there inspect such immigrants. The law further provides that "the inspection officers may order a temporary removal of such aliens for examination at a designated time and place and then and there detain them until a thorough inspection is made," and that "such a removal shall not be considered a landing during the pendency of such examination."

Gentlemen of the jury: Under the twelve informations, which were consolidated for the purposes of this trial, it appears that the steamer "Coptic," a vessel plying between the state of California and the empire of Japan, arrived in the port of Honolulu, Territory of Hawaii, on the 18th day of December, 1902, having

on board, among other Japanese immigrants, the following, to-wit:

Yoritaro Nokao, Tekuichi Ueda, Fukutaro Shimada, Nobui-chi Kaya, Toyoji Matsuda, Katsura Hokao, Juizaemon Matsuda, Gontaro Matsumoga, Soichi Yoshioka, Komajiro Kurazumi, Jisaburo Muzamoto and Suekichi Mihara. That these immigrants, together with some three hundred and eighty others, being in all three hundred and ninety-two, were removed from said steamer "Coptic" to the Quarantine Station, so-called, for the purposes of inspection and examination.

Gentlemen of the jury: The United States has provided no official place or immigrant station for the detention of immigrants in the Territory of Hawaii, pending an examination or inspection as to their competency to enter into the United States. Such examinations are to be made, to all intents and purposes, on board of the steamships or sailing vessels bringing alien immigrants to this country. But it appears from the facts in this case, that it has been customary, for the convenience of the steamship companies, to remove these alien immigrants to the Quarantine Station for the purpose of avoiding delays in the voyages of these steamships to their terminal points; and that in this instance the same procedure was followed.

These immigrants were examined by the officers of the Marine Hospital Service and were found to be suffering from a contagious eye disease, called trachoma, and a report to that effect was made on the 20th day of December, 1902, to the Immigration Inspector, who thereafter, on the 23rd day of December, 1902, after making an inspection of all of these immigrants, including these twelve Japanese, notified the defendant herein that these twelve Japanese, together with some fifty others, were refused a landing. In the meantime, unknown to the immigration officers, the twelve Japanese referred to in these informations had escaped.

And right here, gentlemen of the jury, I wish to instruct you, that during the trial of this case it was admitted by the defendant that the immigrants came to the United States on the steamship "Coptic;" that the defendant is a corporation, and

the agent of the steamship "Coptic;" that the immigrants were taken to Quarantine Island, and that while on the Island they escaped. By reason of these admissions you are charged that no proof whatever was necessary on the part of the government as to them, and you are to take such facts as established.

It is provided by Section 8 of the Act of March 3, 1891, that:

"It shall be the duty of the aforesaid officers and agents of such vessel, to adopt due precautions to prevent the landing of any alien immigrant at any time or place other than that designated by the inspection officers, and any such officer or agent or person in charge of such vessel who shall knowingly or negligently land or permit to land any alien immigrant at any time or place other than that designated by the inspection officers, shall be deemed guilty of a misdemeanor....."

While Section 10 provides in part that:

"All aliens who may unlawfully come to the United States shall, if practicable, be immediately sent back on the vessel by which they were brought in...... And if any master, agent, consignee or owner of such vessel shall refuse to receive back on board the vessel such aliens, or shall neglect to detain them thereon, or shall refuse or neglect to return them to the port from whence they came......such master, consignee, agent or owner shall be deemed guilty of a misdemeanor......"

Gentlemen of the jury, I instruct you that you are to be the exclusive judges of the facts in this case; the law you will take from the Court.

In relation to the first count of these informations, I instruct you that from the time of the entrance of the steamer "Coptic" into the harbor of Honolulu, upon the date mentioned in the said informations, until the final completion of the examination of these alien immigrants by the proper inspection officers, the custody of such immigrants remained in the ship, notwithstanding that they may have been removed from the ship for the purposes of such inspection. In the language of the statute, this "temporary removal shall not be considered a landing, pending such examination." It is done, as was shown in these cases,

for the convenience of the shipping people, and to prevent any delay in the completion of the voyage of such vessel to its terminal point in California. For the purposes of the Act itself, these immigrants are treated as being still on board the vessel, and until they are declared to be lawfully entitled to enter the United States, the responsibility for their safe keeping was and is with the ship, or its agent, under the provisions of the law. They cannot be relieved from the responsibility by claiming or proving that any officer or any employe of the United States may have assumed to look after them.

Therefore, if, pending such examination and inspection, these Japanese, or any one of them, escaped into the territory of the United States, then that was due to the negligent landing of such escaped immigrants, on the part of the defendant at a time and place other than that designated by the inspection officers. And if you should find that such was the fact in any one of the cases prosecuted under these informations, then your verdict must be guilty under the first count or counts of said informations.

Gentlemen of the jury, I instruct you further that you cannot consider any attempt on the part of the defendant to prove due care on its part or the fact that due care was exercised to prevent the escape of any of these immigrants. Under the provisions of the Act of Congress upon which these informations are based, this is no excuse. The steamship company and its agent took the risk when these Japanese immigrants were brought here, that they might be among the prohibited classes and that they might escape and enter the country unlawfully. Nothing will excuse the steamship company or its agent, the defendant in this case, but what is known in law as *vis major* (overwhelming force) or inevitable accident, and neither of these things has been shown in these cases.

Gentlemen of the jury, in reference to the second count of these informations and each of them, I wish to instruct you that it is the law, that after these immigrants had been examined by the proper inspection officers, and a decision adverse to their landing was arrived at, the custody of such immigrants continued

in the steamship company or its agent, and it was the duty of the steamship company or its agent, after notice of the rejection of such immigrants or any one of them, to deport them or any one of them, to the country from whence they came. And if, after rejection by the aforesaid inspection officers, and pending deportation, the immigrants so rejected, or any one of them, escape, then the said steamship company or its agent, is liable under the second count or counts of these informations.

Gentlemen of the jury: You are instructed that in these cases, when the government has established to your satisfaction that these immigrants coming into the United States were rejected by the immigration officers, duly authorized to act in these matters, and the defendant was notified of such rejection, it then became incumbent upon the defendant, as I have before stated, to return such immigrants to the port whence they came, and the law holds the steamship company responsible for the safe keeping of these immigrants, as I have before stated, from the time the ship enters the port of Honolulu with these alien immigrants on board.

Gentlemen of the jury, should the government establish these facts to your satisfaction, then the burden of proof is cast on the defendant to show that such a return was made. As the law has placed the custody of these immigrants in the steamship company or its agents, as I have instructed you, it is not required of the government that it prove that immigrants were not returned. It is a well settled rule of law, even in criminal cases, that the person within whose knowledge the facts are supposed to lie, is required to prove the facts. I therefore instruct you, that if the defendant in these cases has not proven to your satisfaction that these immigrants were returned to the port whence they came, although notified of their rejection by the proper inspection officers, then your verdict should be guilty under the second count of these informations.

Gentlemen of the jury, in arriving at a verdict in these cases, you must pass upon the two counts in each and every informa-

tion; and your verdict must be by the unanimous assent of all your members.

The District Attorney will provide you with proper forms of verdict.